UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **PAMELA MCCULLERS,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.: 1:24-cv-01496-RDP |
| | } |
| **KOCH FOODS OF ALABAMA, LLC, et al.,** | } |
| | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

This case is before the court on the Motion to Dismiss filed by Defendants Koch Foods of Alabama, LLC; Koch Foods of Ashland LLC; and Koch Foods, Inc.[1] (collectively, "Koch Foods"). (Doc. # 11). The Motion has been fully briefed. (Docs. # 11, 15, 16). After careful consideration, the court concludes that Koch Foods's Motion (Doc. # 11) is due to be granted in part.

**I.   Background**

Plaintiff Pamela McCullers ("Plaintiff") has advanced a variety of claims related to her employment with Koch Foods. (Doc. # 1). The claims include, but are not limited to, sex discrimination, hostile work environment, and negligent supervision. (*Id.*). The relevant allegations of Plaintiff's Complaint are summarized below.

Plaintiff is a female who was hired by Koch Foods on August 12, 2013 as a licensed practical nurse at Koch Foods's Ashland, Alabama location. (Doc. # 1 ¶ 6). In February 2018, Cenetta Towns, a Koch Foods employee, approached Plaintiff and told her that Koch Foods was stealing her (Towns's) time. (*Id.* ¶ 7). In April 2018, Towns reported a foot injury to Plaintiff in

---

[1] Initially, Plaintiff filed her Complaint against Koch Foods of Alabama, LLC; Koch Foods of Ashland LLC; Koch Foods, Inc.; and nine fictious parties. After a meet and confer between the parties, Plaintiff agreed to dismiss the nine fictious parties. (*See* Doc. # 11 at 1).

the nurse's office. (*Id.*). After Towns reported this injury to her, Plaintiff took Towns to the emergency department, where a physician instructed Towns to return to work. (*Id.*). Throughout April 2018, Towns continued to report to the nurse's office with complaints about her foot and "with growing animosity about the injury and return to work forms." (*Id.* ¶ 8). On May 29, 2018, Towns poked Plaintiff in the left eye with her fingernail and cursed at Plaintiff. (*Id.*). Plaintiff reported the injury to Koch Foods, but despite Plaintiff's request, the Safety Manager refused to add the incident to the accident report list. (*Id.*).

In April 2019, Koch Foods brought in Michael Burton as a new hire. (*Id.* ¶ 9). Plaintiff alleges that Koch Foods had previously terminated Burton for throwing rocks at Plaintiff and another employee in the parking lot and stating that he was going to kill Plaintiff. (*Id.*). Plaintiff further alleges that Burton was supposed to be on Koch Foods's no hire list. (*Id.*).

In April 2020, after a Koch Foods employee reported to Plaintiff that a household member had tested positive for Covid-19, Plaintiff sent the employee home. (*Id.* ¶ 10). The following day, that same employee brought other employees to work. (*Id.*). According to Plaintiff, she followed Koch Foods's policies and tested the other employees' temperatures and because one of the employees had a fever, Plaintiff sent both employees home. (*Id.*). After this, Plaintiff sent an email to the Safety Manager with concerns about HIPAA violations related to the company's Covid-19 policies. (*Id.*). Plaintiff alleges that thereafter she was reported to the nursing board for following the company's Covid-19 policies and was informed by the Koch Foods Human Resources ("HR") Manager that she would be responsible for paying for her own attorneys to defend her nursing license. (*Id.*).

Plaintiff's Complaint also alleges that "[o]n August 24, 2021, a Koch Foods superintendent pinned Plaintiff in her chair, yelled at her, cussed at her, spit on her, stuck his finger in her face

2

and threatened to knock her head off." (*Id.* ¶ 11). Plaintiff reported the incident to her acting supervisor and the night shift manager, but she never received any information back from HR or her supervisor about the incident. (*Id.*). According to Plaintiff, she only received a "halfhearted apology from the superintendent with a statement that HR said they must get along." (*Id.*).

On September 14, 2021, Plaintiff became aware that the former employee who had reported Plaintiff to the nursing board was being rehired. (*Id.* ¶ 12). Plaintiff sent an email to the Safety Manager, which included a reminder that the employee was supposed to be on the no hire list. (*Id.*) The Safety Manager responded that the employee would be going through orientation. (*Id.*).

In December 2021, Plaintiff was informed that nurses would be required to take a thirty-minute lunch break. (*Id.* ¶ 13). Plaintiff responded with her concerns about her inability to take a full thirty-minute lunch break because she was the only nurse on the night shift. (*Id.*). Plaintiff also informed supervisors of her concern that the lunch-break requirement violated her employment contract. (*Id.*).

In May 2022, Koch Foods attempted to re-hire Towns, the employee who had previously poked Plaintiff in the eye. (*Id.* ¶ 14). Plaintiff reminded her supervisors and HR that Towns was supposed to be on the no hire list. (*Id.*). Nevertheless, Towns "was rehired three times although she was supposed to be on the no hire list due to safety concerns." (*Id.*).

In August 2022, Plaintiff treated a patient who suffered a scratched cornea from broken plexiglass. (*Id.* ¶ 15). Around this time, Plaintiff reported that the eye wash station was not operative, which made it difficult for her to properly treat the patient. (*Id.*). Plaintiff also reported the following concerns: there was not a sanitary spot to clean cuts; the van keys were missing, which required her to take patients to the hospital in her own car; there was a lack of privacy for

patients in the nurse's office; and because of the layout of the nurse's office, nurses were unable to get out if there was a hostile employee. (*Id.*).

On May 8, 2023, Plaintiff emailed her supervisor and HR and stated that she had a "call-in," which she alleges was supposed to be paid at a minimum of four hours, but she was only given three hours for it. (*Id.* ¶ 16). Plaintiff's supervisor responded that because Plaintiff was using her vacation time during the call-in, she was only going to get paid for the time she was actually at the office. (*Id.*). According to Plaintiff, there were multiple incidents throughout Plaintiff's employment with Koch Foods where she was not paid in full for her call-ins. (*Id.*).

On May 8, 2023, Plaintiff alleges that she was sexually assaulted by a Koch Foods employee who came into the nurse's office during Plaintiff's shift for a work injury. (*Id.* ¶ 17). While she had her back turned to the employee to get a cup for a urine sample, the employee stood up and placed his genitals against Plaintiff's backside, placed his hand on Plaintiff's backside/hip area, and wrapped his other hand around Plaintiff's waist. (*Id.*). The employee "then moved his hand from Plaintiff's waist to between her breasts, kissed Plaintiff's neck and whispered, 'Can you help me with this test?'" (*Id.*).

Plaintiff alleges that "[f]ollowing the May 8, 2023 incident in the nurse's office, Koch Foods continued to fail to implement safety measures to protect nurses, especially the night shift nurses who were often alone in the office during their shifts." (*Id.* ¶ 18). After Plaintiff reported the sexual assault to her supervisor, Tasha Hanners ("Hanners"), HR Supervisor Donna Gardner ("Gardner"), Safety Manager Peggy Golden ("Golden"), and HR Manager Randy Cisne ("Cisne"), Plaintiff was no longer allowed to be in the nurse's office unsupervised, although other employees were allowed to be in their offices unsupervised. (*Id.* ¶ 19).

Plaintiff also alleges that "[o]n May 15, 2023, [she] was required to sign a 'final warning' disciplinary action for the sexual assault that occurred on May 8, 2023." (*Id.* ¶ 20). This document required her agreement not to be alone in the nursing office. (*Id.*). According to Plaintiff, for the remainder of her employment with Koch Foods, she was the only nurse disciplined for not having supervision in the nurse's office because of the sexual assault. (*Id.*). Plaintiff had not received any prior warnings or write-ups related to the sexual assault. (*Id.*).

On September 5, 2023, Plaintiff complained about her work hours being changed again. (*Id.* ¶ 21). She claims that occurred multiple times after Hanners became her supervisor. (*Id.*). Plaintiff also reported the following concerns: her supervisors had added more work to her job duties; she no longer received call-in pay; and she was expected to come in for mandatory fifteen-minute meetings on her scheduled days off. (*Id.*). Plaintiff also "had been required to perform the duties of the night safety employee in addition to [Plaintiff's] own job duties because Koch Foods moved him [the night safety employee] to [d]ay shift to make the job easier on the day shift nurses." (*Id.*).

On February 2, 2024, Plaintiff complained about the fact that HR, again, wanted to hire an employee who was supposed to be on the no hire list. (*Id.* ¶ 22). And, she expressed her concerns that the no hire list either did not exist or was not being checked before hiring incumbents. (*Id.*).

On May 5, 2024, a Koch Foods employee reported experiencing a back injury. (*Id.* ¶ 23). On May 7, 2024, Plaintiff reported that the injured employee was favoring his right leg, and Plaintiff informed the employee that protocol was to wait three to five days to allow a muscle strain to heal. (*Id.*). On May 8, 2024, the injured employee returned to the nurse's office crying and with severe pain. (*Id.*). Plaintiff "sent the employee home as 'extra help' and told his wife, at the instruction of Plaintiff's supervisors, not to take the employee to the emergency room." (*Id.*). That

same day, Plaintiff received an email from her supervisors questioning why the injured employee clocked out after only ten minutes on the clock and why Plaintiff was seen walking the injured employee to his car. (*Id.*). Plaintiff responded to the email stating that "the employee could not work and that instructions given to her were to discuss with 'Hawk' and to do her best." (*Id.*). Plaintiff also stated in her response that she walked the employee to his car because he was not capable of getting into the car on his own. (*Id.*).

On May 9, 2023, Plaintiff sent an email to her supervisor requesting information about worker's compensation benefits related to mental health issues caused by one's working environment. (*Id.* ¶ 24).

On May 10, 2024, after learning of an accusation that she was alone in the nurse's office, Plaintiff sent an email to her supervisor stating that "she went back to check, and James was in the office with her for the entire time. Plaintiff requested that they look back at the tapes because there was someone in the office with her." (*Id.* ¶ 25).

On May 14, 2024, Plaintiff emailed Gardner and stated that an employee had come into the nurse's office with a work excuse. (*Id.* ¶ 26). "Before the employee came in, Plaintiff was told by 'Tamisha,' the night shift shipping supervisor, to keep her eyes open." (*Id.*). When the employee with the work excuse came into her office, Plaintiff could smell marijuana on him, so she informed the employee that he needed to go home if he had smoked marijuana. (*Id.*). The employee became upset and said that he was just turning in an excuse. (*Id.*). Plaintiff let the employee know that he would be reported if he tried to go back on the job while high. (*Id.*). Plaintiff called Tamisha three times but was unable to reach her. (*Id.*). So, she went and found Tamisha in the HR office and "informed her that if she was doing reasonable suspicion for the employee, Tamisha needed to bring Plaintiff the paperwork." (*Id.*).

On May 14, 2024, Plaintiff sent an email to Gardner requesting a meeting to speak with Gardner and Cisne. (*Id.* ¶ 27). Plaintiff reported her concerns that she was suspended a few days after she sent an email to her supervisor questioning things in the department. (*Id.*).

On May 15, 2024, Plaintiff sent another email to Gardner "requesting a meeting before the determination of the status of her employment." (*Id.* ¶ 28). Plaintiff alleges that she "reported that after requesting information about worker's compensation for mental health, her email was forwarded to Tracy." (*Id.*). Plaintiff says that "Tracy informed Plaintiff that her personal doctor would have to take her off work." (*Id.*). Plaintiff "responded that Peggy and Tasha were making her job impossible." (*Id.*). Plaintiff also reported that she was not being paid as agreed on when she was hired, and she reported "concerns that she was retaliated against after questioning whether it was HIPAA compliant to have a supervisor, safety tech, human resources, or other employees in the nursing office with the nurses to hear their employees' medical information." (*Id.*). Plaintiff also reported "concerns that she was retaliated against because the employee with the back injury could not work" and "concerns that employees continue to be hired when they are supposed to be on the no hire list." (*Id.*). Plaintiff "stated that she tried to follow the chain of command in reporting her concerns regarding safety and that it failed her." (*Id.*). On the night of May 15, 2024, Plaintiff received an email questioning her sick time. (*Id.*).

On May 20, 2024, "Plaintiff's employment with Koch Foods was terminated with one of the following contributing factors being that supervisors had determined after looking at security footage that Plaintiff was alone in the nurse office without supervision, a rule that was implemented to penalize Plaintiff for reporting a sexual assault." (*Id.* ¶ 29). According to Plaintiff, she was not alone in the nurse's office and Koch Foods refused to allow her to prove that she had a supervisor

present on the occasion in question. (*Id.*). Plaintiff received her official termination letter on May 21, 2024. (*Id.*).

On August 21, 2024, Plaintiff filed a complaint for sex discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Doc. # 22 at 3-4). On September 5, 2024, the EEOC issued Plaintiff a notice of her right to sue regarding the charges she brought to the agency's attention. (*Id.*). Plaintiff filed her Complaint (Doc. # 1) in federal court on November 1, 2024.

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for

relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.     Analysis**

Plaintiff asserts the following claims against Defendants: sex discrimination (Count One); sexual harassment – hostile work environment (Count Two); wrongful termination (Count Three); negligence (Count Four); negligent hiring, retention, training, and supervision (Count Five); vicarious liability (actual agency) (Count Six); vicarious liability (apparent agency) (Count Eight); and vicarious liability (joint venture) (Count Nine). (Doc. # 1). Plaintiff does not assert a cause of action labeled as "Count Seven." (*See generally id.*). Plaintiff also provides in her Complaint a separate subheading, which states, "Combining and Concurring Conduct." (*Id.* at 23).

The court addresses each of Plaintiff's claims and the stray heading, "Combining and Concurring Conduct" below.

### A. Timeliness of Plaintiff's Claims

Due to the various allegations in Plaintiff's Complaint which span from 2018 to 2024, the court must assess the timeliness of Plaintiff's Title VII claims. "As a prerequisite to bringing suit under Title VII, a charge must be filed with the EEOC within 180 days of the date of the act giving rise to the charge." *Calloway v. Partners Nat. Health Plans*, 686 F.2d 446, 448 (11th Cir. 1993) (citing 42 U.S.C. § 2000(e)-5(e)). Plaintiff filed her EEOC charge on August 21, 2024. (Doc. # 22 at 3-4). Thus, there is a substantial question as to whether the charge was timely filed with regard to any events that occurred prior to February 23, 2024.

### B. Sex Discrimination (Count One)

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). In her Complaint, Plaintiff alleges that Koch Foods discriminated against her by "harassing her, subjecting her to a hostile work environment, retaliating against her for reporting a sexual assault, and firing her." (Doc. # 1 ¶ 34). Plaintiff further alleges that "Koch Foods' actions were taken with a willful and w[a]nton disregard of Plaintiff's rights under Title VII." (*Id.* ¶ 35).

To establish a prima facie case for sex discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019). However, in *Swierkiewicz v. Sorema, N.A.*, the Supreme Court established that for employment discrimination cases, "the prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510

(2002). Following *Swierkiewicz*, the Eleventh Circuit has repeatedly held that a Title VII claimant does not have to plead a prima facie case to survive a motion to dismiss. *See Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1270-71 (11th Cir. 2004); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). "Instead, 'a complaint need only provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Boyd v. Medtronic, PLC*, 2018 WL 1964572, at *4 (N.D. Ala. Apr. 26, 2018) (citing *Surtain*, 789 F.3d at 1246 (in turn quoting *Davis*, 516 F.3d at 974)). Thus, while Plaintiff "is not required to plead every fact of a prima facie case, she must at a minimum assert facts demonstrating an intent to discriminate." *Edge v. Daechang Seat Corp. USA*, 2024 WL 1321072, at *2 (M.D. Ala. Mar. 27, 2024) (citation omitted).

In its Motion to Dismiss, Koch Foods argues that Plaintiff "fails to assert any allegation that she suffered any adverse employment action because of her gender." (Doc. # 11 at 4). The court agrees. While Plaintiff's Complaint contains a myriad of allegations related to her employment with Koch Foods, none of these allegations can be read to suggest that Plaintiff suffered an adverse employment action because she is a female. Plaintiff merely alleges that "other employees" were allowed to work unsupervised in their office (Doc. # 1 ¶ 19) and that she was "the only nurse disciplined for not having supervision in the nurse['s] office." (*Id.* ¶ 20). These allegations do not establish that Plaintiff was treated differently because she is a woman. In other words, the allegations do not suggest that the "other employees" who were allowed to work unsupervised in their office were males, or that the other nurses who were not disciplined for not having supervision in the nurse's office were males. Thus, these allegations do not "assert facts demonstrating an intent to discriminate." *Edge*, 2024 WL 1321072, at *2.

In her response to Koch Foods's motion, Plaintiff argues that the adverse employment action she was subjected to was "the enactment and enforcement of policies and procedures applied only to Plaintiff in response to her report of sexual harassment and the firing of Plaintiff for her failure to comply with the discriminatory policies and procedures." (Doc. # 15 at 4). Plaintiff further contends that "Defendants routinely and pervasively discriminated against Plaintiff for her report of the sexual assault up to the date they fired her." (*Id.*). And, Plaintiff argues that she sufficiently pleaded the alleged discrimination by stating:

> that following her reports regarding safety, [Plaintiff] was not paid in full for call-ins, she was singled out as the only nurse no longer allowed to be in the nurse office unsupervised, she was required to sign a "final warning" disciplinary action in response to her report of the sexual assault, her work hours were routinely changed, and finally, she was terminated for being alone in the nursing office with an employee on May 10, 2024, the exact policy that was implemented and enforced only against her in retaliation for her reporting the sexual assault.

(*Id.* at 4-5).

But, again, Plaintiff has not plausibly alleged Koch Foods acted with an intent to discriminate because Plaintiff has not alleged that these actions were taken because Plaintiff is a woman. Plaintiff has not alleged that men (either those who were sexually assaulted or not) were paid in full for call-ins or were not terminated for being alone in the nurse's office. Without any allegations to support that Koch Foods acted because of Plaintiff's gender, Plaintiff has not sufficiently stated a claim of sex discrimination.

And, to the extent that Plaintiff also asserts a Title VII retaliation claim because Koch Foods discriminated against her by "retaliating against her for reporting a sexual assault, and firing her" (Doc. # 1 ¶ 34), this claim also fails as currently pleaded. A Title VII retaliation claim requires a plaintiff to show that she (1) engaged in a statutorily protected activity, (2) suffered an adverse employment action, and (3) there is a casual relation between the events. *Adams v. City of Montgomery*, 569 F. App'x 769, 772 (11th Cir. 2014) (citing *Crawford v. Carroll*, 529 F.3d 961,

12

970 (11th Cir. 2008)). The only alleged activity protected by Title VII asserted in Plaintiff's Complaint is her report of the alleged incident on May 8, 2023 in the nurse's office, which involved a male coworker inappropriately touching her. (Doc. # 1 ¶ 17). *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Statutorily protected expression includes internal complaints of sexual harassment to superiors"). The adverse employment action Plaintiff alleges she suffered was the implementation of Koch Foods's policy that, following the May 8, 2023 incident, a supervisor needed to be in the nurse's office so that a nurse was not alone in the office. But, Plaintiff has not explained how this amounts to a materially adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (describing a materially adverse action as one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination"). Furthermore, to the extent that Plaintiff has asserted a retaliation claim under this count, it is a shotgun pleading because as a separate legal claim, her retaliation claim must be listed under a separate heading. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996). For all of these reasons, Plaintiff has not sufficiently pled her sex discrimination claim.

    **C.**    **Sexual Harassment – Hostile Work Environment (Count Two)**

"Sexual harassment that takes the form of a hostile work environment is actionable under Title VII." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)). To establish a Title VII prima facie case for a hostile work environment based on sexual harassment, the Eleventh Circuit has stated that an employee must demonstrate the following elements:

> (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of the employment; and (5) there is a basis for holding the employer liable for the harassment.

13

*Id.* (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). Koch Foods argues that Plaintiff has not alleged facts that show Plaintiff's "complained of conduct was sufficiently severe or pervasive." (Doc. # 11 at 7).

"Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (emphasis in original). In evaluating whether harassment is severe or pervasive, courts look to the totality of the circumstances, including factors such as (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's job performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Although Plaintiff alleges she was sexually assaulted by a Koch Foods employee on May 8, 2023 in the nurse's office (Doc. # 1 ¶ 17), there is a question whether this is the basis for her hostile work environment claim. Rather, it appears Plaintiff bases her hostile work environment claim on the alleged actions Koch Foods took after the incident on May 8, 2023. For instance, in pleading her hostile work environment claim, Plaintiff alleges that Koch Foods "participated in the harassment of Plaintiff by its harassing, discriminatory, and retaliatory behavior toward Plaintiff as alleged herein and/or substantially assisted, encouraged, and condoned the continued harassment toward Plaintiff by creating a hostile work environment and retaliating against Plaintiff for reporting a sexual assault." (Doc. # 14 ¶ 39). Plaintiff further alleges that Koch Foods "subjected Plaintiff to severe and/or pervasive harassment of a sexual manner . . . . The sexual harassment continued throughout Plaintiff's employment each time policies were enforced against Plaintiff in her response to her report of sexual harassment." (*Id.* ¶ 40). These allegations are wholly conclusory and do not show how the alleged sexual harassment was either severe or

14

pervasive. Plaintiff merely states that the harassment was "severe and/or pervasive" (*id.*), but does not provide any facts explaining how Koch Foods's alleged harassment meets that standard.

In her response to Koch Foods's Motion to Dismiss, Plaintiff argues that she has sufficiently pleaded facts that Koch Foods's "conduct occurred on a frequent basis, specifically, every day of Plaintiff's employment through the institution and enforcement of sexually discriminatory policies and procedures used only to punish Plaintiff for her report of sexual assault and to dissuade Plaintiff from taking further action in regard to the sexual assault." (Doc. # 15 at 6). Plaintiff further contends that Koch Foods's "conduct was severe enough that it was the basis for Plaintiff's termination" and "[t]he conduct was humiliating to Plaintiff on a daily basis as she was continuously singled out and discriminated against for being sexually assaulted at work." (*Id.*).

Based on Plaintiff's allegations and her response to Koch Foods's Motion to Dismiss, the court construes Plaintiff's allegations under this count to be Koch Foods's implementation of the policy of having a supervisor in the nurse's office was a form of harassment and created a hostile work environment for Plaintiff. But neither Plaintiff's allegations in her Complaint nor her arguments in her response to the motion to dismiss show how the implementation of Koch Foods's policy and Plaintiff's need to abide by the policy created a sexually hostile work environment. Therefore, at present she has failed to adequately plead this claim.

### D.   Wrongful Termination (Count Three)

In her response to Koch Foods's Motion to Dismiss, Plaintiff concedes that Count Three should be dismissed. (Doc. # 15 at 7). Therefore, Plaintiff's wrongful termination claim under Count Three of Plaintiff's Complaint is due to be dismissed.

### E.   Negligence (Count Four)

A plaintiff bringing a negligence claim must allege four elements: (1) duty; (2) breach; (3)

causation; and (4) damages. *See, e.g., Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (citing *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)). In her Complaint, Plaintiff alleges that Koch Foods breached its duty of care to Plaintiff in the following ways:

> a. Failing to use and apply employment policies to protect employees from retaliation for protection actions, such as reporting sexual harassment;
> b. Failing to take adequate corrective action or preventive action;
> c. Failing to provide a safe working environment for employees;
> d. Failing to maintain records and documentation to prevent the rehiring of prior employees who created an unsafe working environment;
> e. Failing to implement policies and procedures that effectively allow employees to report concerns and receive a timely response; and
> f. Other acts of negligence to be determined through discovery.

(Doc. # 1 ¶ 50).

In its Motion to Dismiss, Koch Foods argues that "Title VII subsumes Plaintiff's negligence claims," but "[t]o the extent any negligence claim asserted by Plaintiff is not subsumed by Title VII, Plaintiff does not allege any breach of a duty recognized by Alabama law." (Doc. # 11 at 11). The court agrees. Plaintiff's allegations appear to relate to retaliation and sexual harassment in the workplace, which can be addressed by a Title VII claim. *See James v. Montgomery Reg'l Airport Auth.*, 2016 WL 4414843, at *2 (M.D. Ala. 2016) ("Congress passed Title VII precisely because existing common-law mechanisms for preventing workplace discrimination were inadequate.").

Additionally, the court notes that although there is a statutory and common law duty imposed on employers to provide employees with a reasonably safe work environment, *see* Ala. Code § 25-1-1(a); *Morris v. Merritt Oil Co.*, 686 So. 2d 1139, 1142 (Ala. 1996), "neither the statutory nor common law duty of an employer to provide a safe workplace has been extended beyond the requirement that employers provide safe *physical* conditions in the workplace." *Speegle v. Loparex, Inc.*, 2007 WL 9711748, at *4 (N.D. Ala. Apr. 5, 2007) (citing *Ex parte Shelby Cnty. Health Care Auth.*, 850 So. 2d 332, 339-340 (Ala. 2002) ("the plain language of [Ala. Code]

§ 25-1-1 . . . places this duty on employers only so far as they have control over the physical conditions of the workplace and the premises of the workplace.") and *Morris*, 686 So. 2d at 1144 ("there is no precedent for extending the provisions of § 25-1-1 to require that in meeting the duty to provide employees with a safe workplace, an employer must ensure that nothing in the workplace disturbs the emotional well-being of the employees.")). Therefore, an allegation that an employer breached his statutory or common law duty to provide a safe workplace when sexual harassment occurs fails to state a negligence claim. *Speegle*, 2007 WL 9711748, at *4.

And, to the extent that Plaintiff claims Koch Foods breached its duty to investigate a sexual harassment claim, even if that claim could be asserted under Alabama law (and, to be clear, the court doubts that it can), the claim is insufficiently pled. In *Stevenson v. Precision Standard, Inc.*, the court "decline[d] to extend [its] holdings to recognize a cause of action based on an employer's negligence or wantonness in investigating a claim, independent of proof of wrongful conduct of an employee." 762 So. 2d 820, 825 (Ala. 1999). Because Plaintiff has not sufficiently pled a claim for sexual harassment (as the court explained above), it follows that a claim against Koch Foods for failing to investigate such a claim also fails. *See id.* ("A verdict against [the defendant] based on a finding of a negligent or wanton failure to investigate a complaint of sexual harassment, in a setting where [the plaintiff] failed to prove sexual harassment, cannot stand.").

For all of these reasons, Plaintiff has failed to adequately plead a negligence claim.

**F.     Negligent Hiring, Retention, Training, and Supervision (Count Five)**

Under Alabama law, in order for an employer to be liable for the negligent hiring, training, retention, and supervision of its employee, the plaintiff must also prove some underlying "wrongful conduct" on the part of an employee. *Brannon v. Etowah Cnty. Ct. Referral Program, LLC*, 325 F.R.D. 399, 426 (N.D. Ala. 2018). That is, "[i]n order to establish a claim against an

17

employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed . . . [a] tort." *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. 2002); *see also Smith v. Boyd Bros. Transp., Inc.*, 406 F. Supp. 2d 1238, 1248 (M.D. Ala. 2005) ("Under Alabama laws, the finding of underlying tortious conduct is a precondition to invoking successfully liability for the negligent or wanton training and supervision of an employee.").

Plaintiff's claim under Count Five does not allege that any employee of Koch Foods committed an underlying tort causing Plaintiff injury. Count Five merely states the following: "Defendants negligently hired, retained, trained, and/or supervised the supervisors, managers, human resources employees, and other Koch Foods employees who interacted with Plaintiff. As a direct and proximate result of said negligent hiring, retention, training, and supervision, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages." (Doc. # 1 ¶¶ 53-54). These are entirely conclusory allegations that do not specify which employee committed an alleged tort or the alleged tort committed. Thus, the court finds that Plaintiff has not sufficiently pled a claim for negligent hiring, retention, training, and supervision.

**G.    Vicarious Liability (Actual Agency) (Count Six); Vicarious Liability (Apparent Agency) (Count Eight); and Vicarious Liability (Joint Venture) (Count Nine)**

Koch Foods argues that Plaintiff's vicarious liability claims under Counts Six, Eight, and Nine should be dismissed because vicarious liability is not a cause of action. (Doc. # 11 at 14). The court agrees. The allegations of Counts Six, Eight, and Nine "do not assert legal causes of action under Alabama law but rather legal theories by which a plaintiff may assert a cause of action against a party other than the tortfeasor." *Wells v. Baity Bros. Trucking, Inc.*, 2021 WL 9565488, at *6 (N.D. Ala. June 11, 2021) (citation omitted). Because Counts Six, Eight, and Nine are merely theories of liability and not causes of action, Plaintiff's claims under these counts are due to be

dismissed.

### H. "Combining and Concurring Conduct" Heading

In its Motion to Dismiss, Koch Foods moved to dismiss Plaintiff's stray heading "Combining and Concurring Conduct" because it does not state a plausible claim for relief under Alabama law. (Doc. # 11 at 15-16). Again, the court agrees. *See Southall v. Allstate Vehicle & Prop. Ins. Co.*, 2024 WL 3183228, at *5 (S.D. Ala. June 26, 2024) (holding the complaint's cause of action for combined and concurring conduct "does not state a plausible claim for relief that is cognizable under Alabama law"); *Steel v. Viscofan USA, Inc.*, 2017 WL 253960, at *1 n.2 (M.D. Ala. Jan. 19, 2017) ("The court is not aware of an independent cause of action under Alabama law for combined injury. As a result, the court does not treat this allegation as an independent cause of action . . . ."). Moreover, Plaintiff's response to Koch Foods's motion does not argue why the lone heading should remain pending, thus the court dismisses any possible claims Plaintiff may be attempting to allege under this heading.

### IV. Conclusion

For the reasons explained above, Koch Foods's Motion to Dismiss (Doc. # 11) is due to be granted in part. The Motion (Doc. # 11) is due to be granted as to Counts Three, Six, Eight, Nine, and the "Combining and Concurring Conduct" heading. On or before March 20, 2025, to the extent she wishes to pursue the claims advanced in Counts One, Two, Four, and Five, Plaintiff shall file an amended complaint remedying the pleading deficiencies in those claims.

**DONE** and **ORDERED** this February 27, 2025.

R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE